UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCE DX, INC., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:12-cv-0756-TAB-TWP |
| ) | |
| HEALTH POINT DIAGNOSTIX, INC., ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS
AND ALTERNATIVELY FOR TRANSFER OF VENUE**

**I.  Introduction**

The product giving rise to this patent infringement case is a fluid separator collection kit that enables the testing of biological fluids. Defendant Health Point Diagnostix moves to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and venue or, alternatively, to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). The first issue presented by the motion to dismiss is whether shipping a relatively minor number of products from Illinois to a customer in Indiana permits Plaintiff Advance DX to litigate its patent infringement claim in this Court. The Court agrees with Plaintiff that the Southern District of Indiana has personal jurisdiction and that venue is appropriate under 28 U.S.C. § 1391. The second issue presented by the motion is whether a § 1404(a) transfer to the Northern District of Illinois is appropriate. Because the parties, witnesses, and vast majority of events and discovery related to this action are located in the Northern District of Illinois, the Court agrees with Defendant that this case should be transferred

1

to the Northern District of Illinois.

## II. Discussion

### A. *Personal Jurisdiction*

Defendant points out that the complaint lacks any factual allegations relating to Defendant's contacts with Indiana. However, factual allegations in the complaint supporting personal jurisdiction are not required. *Nerds on Call, Inc. (Ind.) v. Nerds on Call, Inc. (Cal.)*, 598 F. Supp. 2d 913, 915 (S.D. Ind. 2008). Nevertheless, when a personal jurisdiction challenge is raised in a motion to dismiss, Plaintiff must make a prima facie showing of jurisdictional facts. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). All factual disputes are resolved in Plaintiff's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

"In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process requirements are satisfied." *Nerds*, 598 F. Supp. 2d at 915. "Because Indiana's long-arm statute is co-extensive with the limits of federal due process, the Court applies federal due process standards." *Id.* A prima facie showing for due process requires that a defendant not present in the forum have "certain minimum contacts" with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Abelesz v. OPT Bank*, 692 F.3d 638, 654 (7th Cir. 2012). "The basic inquiry is whether the defendant's contacts with the forum are such that it should reasonably anticipate being haled into court there." *Id.*

There are two types of personal jurisdiction: general and specific jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear

any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* In contrast, specific jurisdiction is "jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself." *Id.*

The facts here do not give rise to general jurisdiction, and Plaintiff does not suggest otherwise. Both parties are incorporated and have their principal places of business in Illinois. All facilities, operations, and employees are in Illinois. Considering that Defendant's contacts with Indiana are limited to collection kit sales by way of the Internet and mail, specific jurisdiction is implicated. "There are various formulations of the standard for establishing specific personal jurisdiction, but they may be condensed to three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice."[1] *Felland*, 682 F.3d at 672.

1. Purposeful Availment

Defendant's Internet-based contacts are related to two websites. One website is operated by a distributor that sells Defendant's collection kits. [Docket No. 30-2 at 8–10.] The other website operates under one of Defendant's aliases, Geonostics, and although it does not sell products on its website, it holds itself out to be an entity specializing in "clinical laboratory services throughout the United States as well as internationally." [Docket No. 30-4.] The

---

[1] In a patent infringement case, the question under the second prong is whether "the claim arises out of or relates to the defendant's activities with the forum state." *Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*, 396 F. Supp. 2d 961, 966 (S.D. Ind. 2005).

Seventh Circuit has held that if a defendant merely operates a "website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). But when the website targets the forum state's market, it is foreseeable that the entity could be haled into court in the forum state. *Id.*

For example, the defendant in *Hemi* "maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts." *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010). The defendant's website stated that it would ship to any state except New York. *Id.* at 758. The Seventh Circuit concluded that these contacts established that the defendant "stood ready and willing" to do business with the plaintiff, an Illinois resident and therefore purposefully availed itself of doing business in Illinois. *Id.*; *see also Dental Arts Lab., Inc. v. Studio 360 Dental Lab., LLC*, No. 10-CV-4535, 2010 WL 4877708, at *6 (N.D. Ill. Nov. 23, 2010) (finding that a Nevada company holding itself out as selling products to residents of any state, and which sold products in Illinois, had purposefully availed itself of the privilege of conducting activities in Illinois).

Similar to *Hemi* and *Studio 360*, Defendant's distributor sold the collection kits on its website to CardioQuick Health Resources in Indiana.[2] [Docket No. 29 at 3; Docket No. 30-2 at 8–10.] Approximately 10 collection kits were sold and shipped to CardioQuick. [Docket No.

---

[2]Although Defendant used a distributor, Defendant can still be subject to personal jurisdiction where its products were distributed. *Moser v. Ayala*, No. 11-C-3563, 2013 WL 1337187, at *5 (N.D. Ill. Mar. 29, 2013); *Snap-On, Inc. v. Robert Bosch LLC*, No. 09-C-6914, 2012 WL 6106474, at *3 (N.D. Ill. Dec. 10, 2012).

30-1 at 1.] CardioQuick used the kits and shipped them from Indiana back to Defendant for testing. [Docket No. 30-1 at 6; Docket No. 31.] Test results from those kits were then sent from Illinois to nine patients in Indiana. [Docket No. 30-1 at 6.] Although the distributor's website did not specifically state that it would ship to a specified number of states or any state in general, Defendant announced on its website that it was ready and willing to do business "throughout the United States as well as internationally." [Docket No. 30-4.] Such willingness to do business in any state translates to purposeful availment in Indiana when considered in conjunction with the series of shipping exchanges with CardioQuick in Indiana.

Defendant attempts to paint these contacts as "fortuitous happenstance" because one of its existing customers in Montana was acquired by CardioQuick and thereafter 10 units (or .015% of its total products) were sold and shipped to CardioQuick in Indiana. [Docket No. 35 at 8; Docket No. 35-1.] But this does not change the fact that after the acquisition, Defendant purposefully engaged in a business relationship with CardioQuick in Indiana—however minor compared to other state sales—by shipping kits to Indiana, receiving completed tests from Indiana, and relaying the results back to patients in Indiana. Moreover, a willingness to change shipping locations from Montana to Indiana is consistent with Defendant's willingness to do business "throughout the United States as well as internationally." Accordingly, Defendant purposefully availed itself of the privilege of conducting business in Indiana.

  2. Cause of Action

Plaintiff must next show that the cause of action arises out of or directly relates to those activities directed at Indiana. *Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*, 396 F. Supp. 2d 961, 966 (S.D. Ind. 2005). Plaintiff has done so. Plaintiff is suing for patent infringement.

Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). "Thus, patent infringement results from an offer to sell as well as the sale of a patented invention." *Aero*, 396 F. Supp. 2d at 969. As explained above, Defendant offered to sell, and in fact did sell, the alleged infringing kits to a customer in Indiana. Defendant emphasizes the fact that only .015% of Defendant's total shipments were with Indiana customers. [Docket No. 35 at 5.] But even a single offer to sell is sufficient to meet the second prong of the due process inquiry. *Aero*, 396 F. Supp. 2d at 969. Therefore, this cause of action arises out of the activities directed at Indiana.

        3.        Fair Play and Substantial Justice

"Once it has been decided that a defendant purposefully has established contacts within the forum state, those contacts may be evaluated in light of other factors to determine, in the final analysis, whether the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). These factors include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the dispute, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Defendant bears the burden of showing that the exercise of jurisdiction is incompatible with traditional notions of fair play and substantial justice. *Aero*, 396 F. Supp. 2d at 966.

Defendant's brief in support of its motion to dismiss does not address these factors or assert that litigation in this jurisdiction offends traditional notions of fair play and substantial

justice. [Docket No. 14.] Although Defendant raised the issue in its reply brief after Plaintiff pointed out that Defendant ignored the issue, "a party is not permitted to raise an issue for the first time in its reply." *Bunnell v. Conrail*, No. 99-693-C-H/G, 2001 WL 388865, at *8 (S.D. Ind. 2001). Thus, Defendant fails to satisfy its burden, and Defendant's motion is denied to the extent that Defendant seeks dismissal of this action.

B. Venue

Defendant also moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. 28 U.S.C. § 1391(b)(1) permits a plaintiff to bring an action in the district where "any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(c)(2) states that the "capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As set forth above, Defendant is subject to the Court's personal jurisdiction with respect to the allegations at issue. Therefore, 28 U.S.C. § 1391(b)(1) provides an adequate basis for venue in this district.

Alternatively, Defendant argues that venue should be transferred to the Northern District of Illinois. Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Courts consider the following factors in deciding whether to transfer venue to another district: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the convenience of the parties; (4) the convenience of non-party witnesses; (5) the court's power to

compel the appearance of unwilling witnesses and the costs of obtaining attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of the courts with the applicable law; (8) the relationship between the forum community and the subject of the litigation; (9) the congestion of the respective court dockets; and (10) whether transfer would facilitate consolidation of cases." *The Sportsman Channel, Inc. v. The Small Grp.*, No. 08-CV-65, 2008 WL 2909811, at *5 (E.D. Wis. July 25, 2008).

The parties do not dispute that this case could have been filed in the Northern District of Illinois. Rather, the parties disagree whether the Northern District of Illinois is more convenient and better serves the interests of justice. "When a plaintiff chooses her own forum, it is normally reasonable to assume that the choice is convenient," *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002), and "the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Despite this general principle, proceeding with litigation in the Southern District of Indiana is a stretch considering the relatively minor contacts Defendant had with Indiana and that the parties both operate out of the Northern District of Illinois.

To avoid transfer, Plaintiff argues that it prosecuted the patent in question in Indiana and the bulk of discovery is located in Indiana. [Docket No. 29 at 9.] Although the patents were prosecuted in Indiana, Defendant has not asserted that it is challenging the validity of Plaintiff's patent [Docket No. 35 at 7], and Plaintiff has not advanced any argument explaining why the prosecution documents are so relevant to the allegations of infringement that the case should remain in Indiana. On the contrary, both parties are incorporated and have their principal places of business in Illinois. Their employees, records, and business operations are in Illinois.

8

Defendant's collection kits are manufactured in Illinois and Defendant asserts that potential witnesses are in Illinois, although Defendant has not identified those witnesses. As Defendant points out, only approximately .015% of Defendant's total shipments were sent to Indiana. [Docket No. 35 at 8.] Thus, contrary to Plaintiff's assertion, the bulk of discovery is in Illinois.[3] As Defendant points out, "other than stating that its lawyers and their files are located in Indiana, there is no argument that Advance could not obtain convenient and effective relief in its own home state—Illinois." [Docket No. 35 at 5.]

Plaintiff also argues that the anticipated damages in this case are under $1 million and Plaintiff cites to a survey that indicates the cost of litigating a patent infringement case in the Northern District of Illinois for similar damages tends to be higher than certain parts of the country. [Docket No. 29 at 9; Docket No. 30-5.] The survey, however, is given little weight since it does not specifically address Indiana, let alone the Southern District of Indiana. Even if Plaintiff is correct that patent litigation in the Northern District of Illinois is more expensive than in Indiana, this factor alone is an insufficient basis for maintaining this case in the Southern District of Indiana because the parties, witnesses, and vast majority of the events and discovery related to this action are located in the Northern District of Illinois. These other factors outweigh any additional costs incurred in litigating the patent infringement claim in the Northern District of Illinois. Accordingly, a § 1404(a) transfer to the Northern District of Illinois is appropriate.

---

[3]Any prosecution documents located in Indiana can easily be made available in Illinois. *See Sportsman Channel*, 2008 WL 2909811, at *5 ("[T]he court also gives little weight to Image Factory's arguments that documents are located in California. '[I]n these more modern days of photocopying, faxing and other electronic means of retrieval, [this] factor is a nonstarter.'").

### III. Conclusion

For the reasons above, the Southern District of Indiana has personal jurisdiction and venue is appropriate under 28 U.S.C. § 1391. However, a § 1404(a) transfer to the Northern District of Illinois is appropriate since the parties, witnesses, and vast majority of the events and discovery related to this action are located in the Northern District of Illinois. Therefore, Defendant's motion to dismiss and to transfer [Docket No. 13] is denied to the extent Defendant seeks dismissal, but granted to the extent that this case shall be transferred to the Northern District of Illinois for further proceedings. The Clerk is directed to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Any previously ordered dates and deadlines are vacated and any other pending motions are denied as moot.

DATED: 07/17/2013

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Talvaldis Cepuritis
OLSON & CEPURITIS, LTD
20 N. Wacker Drive, 36th Floor
Chicago, IL 60606

Harold C. Moore
MAGINOT MOORE & BECK
hcmoore@maginot.com

Kelli D. Morin
MAGINOT MOORE & BECK
kdmorin@maginot.com

Michael A. Swift
MAGINOT MOORE & BECK LLP
maswift@maginot.com